UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| EVA MARIE BARRETT, | ) | |
|---|---|---|
| Petitioner, | ) ) ) | |
| v. | ) ) | Nos. 2:19-CV-091 2:17-CR-092 |
| UNITED STATES OF AMERICA, | ) ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

Before the Court is Eva Marie Barrett's ("Petitioner's") *pro se* motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255. [Doc. 1; Criminal Docket ("Crim.") Doc. 355].[1] The United States has responded in opposition [Doc. 8]. Petitioner did not file a reply, and the time for doing so has passed. *See* Rule 5(d) of the Rules Governing Section 2255 Proceedings for the United States District Courts; *see also* [Doc. 4]. For the reasons below, Petitioner's § 2255 motion [Doc. 1; Crim. Doc. 355] will be **DENIED**.

**I. BACKGROUND**

In January 2018, Petitioner and eight co-defendants were charged in a six-count superseding indictment pertaining to distribution of 1,000 kilograms or more of marijuana

---

[1] Document numbers not otherwise specified refer to the civil docket.

along with several gun-related charges [Crim. Doc. 101]. Petitioner was named in three counts. *See id.*

On February 5, 2018, Petitioner entered into a plea agreement with the government. [Crim. Doc. 120]. Petitioner agreed to plead guilty to one count of a lesser included offense of Conspiracy to Distribute 100 kilograms or more of marijuana. [*See id.*] The plea agreement was signed by Petitioner and attorney Wayne Stambaugh.

In her plea agreement, Petitioner acknowledged that on July 7, 2016, a state search warrant was executed at Petitioner's residence and "approximately one half [sic] pound of processed marijuana" along with $4,680.00 was seized [*Id.* at 2]. Officers also located a Jennings, 9mm semi-automatic pistol and MoneyGram receipts during the search. [*Id*]. One of the MoneyGram receipts was a transfer of $2,000.00 from Petitioner to a co-defendant at a Wal-Mart in Oregon. [*Id.*]. Petitioner further agreed that she was "responsible conspiring to distribute at least 100 kilograms but less than 400 kilograms of marijuana." [*Id.* at 3]. Petitioner also acknowledged that "the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the defendant's criminal history, and pursuant to other factors and guidelines set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553." [*Id.* at 4].

The Court conducted a change of plea hearing on February 20, 2018. Although there is no transcript of that hearing in the record, the Court recalls conducting its standard

colloquy with Petitioner and finding her competent to enter a guilty plea.[2] The Court confirmed that Petitioner indeed wished to plead guilty. The Court also confirmed: that Petitioner had been afforded ample time to discuss the case with her attorney; that she believed that her attorney is fully aware of all the facts on which the charges were based; that counsel had explained the meaning of any words Petitioner might not have understood; that counsel had explained the terms of Petitioner's plea agreement to her; and that Petitioner understood that her sentence would be determined *by the Court*.

The presentence investigation report ("PSR") calculated a total offense level of 23 and criminal history category of I, resulting in a guideline range of 46 to 57 months. [Crim. Doc. 172, ¶ 64]. However, the statutorily required minimum sentence of five years was greater than the maximum of the applicable guideline range; therefore, the guideline term of imprisonment was 60 months pursuant to USSG §5G1.1. [*Id.*]. The PSR also noted that, but for Petitioner's plea agreement, she would have been exposed to a mandatory consecutive term of imprisonment of 60 months, which would have been an aggregate sentence of 120 months. [*Id.* at ¶ 65].

The government filed a notice of no objections to the PSR. [Crim. Doc. 178]. The government filed a sealed motion for downward departure requesting the Court grant a one-level reduction from the advisory guideline range pursuant to U.S.S.G. § 5K1.1, reducing Petitioner's guideline range from 60 months to 46 to 57 months. [Crim. Doc. 213,

---

[2] Where, as here, the same judge considering the § 2255 motion also presided over the underlying proceedings, the judge may rely on his recollections of those proceedings. *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013).

p. 2]. The government also filed sentencing memorandum wherein it indicated that the correct advisory guideline calculation was 46 to 57 months imprisonment and reserved the right to file a motion for departure. [Crim Doc. 182].

Petitioner, through counsel, also filed a notice of no objections to the PSR. [Crim. Doc. 187]. Petitioner, through counsel, filed a sentencing memorandum, requesting a departure from the advisory guideline range based on the governments motion for downward departure and the new sentencing procedures set forth in *United States v. Booker*, 543 U.S. 220, 245 (2005). [Crim. Doc. 207]. The recommendation was based on the PSR calculation of a total offense level of 23, which included a 2-point enhancement for a firearm being possessed. [*See* Crim. Doc. 172, ¶ 34].

On June 26, 2018, the Court sentenced Petitioner to a total of 46 months' imprisonment, with such term of imprisonment to run concurrently with Sullivan County, Tennessee, Criminal Court Docket Number 201-CR-69113. [Crim. Doc. 261, p. 2]. Petitioner did not file a direct appeal, but on May 31, 2019, she filed this timely § 2255 motion.

## II. STANDARD OF REVIEW

Under § 2255(a), a federal prisoner may move to vacate, set aside, or correct her judgment of conviction and sentence if she claims that the sentence was imposed in violation of the Constitution or laws of the United States, that the court lacked jurisdiction to impose the sentence, or that the sentence is in excess of the maximum authorized by law or is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). As a threshold standard, to obtain post-conviction relief under § 2255, the motion must allege: (1) an error of

constitutional magnitude; (2) a sentence imposed outside the federal statutory limits; or (3) an error of fact or law so fundamental as to render the entire criminal proceeding invalid. *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003).

A movant bears the burden of demonstrating an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *See Reed v. Farley*, 512 U.S. 339, 353 (1994) (noting that the Petitioner had not shown that his ability to present a defense was prejudiced by the alleged constitutional error); *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993) (addressing the harmless-error standard that applies in habeas cases alleging constitutional error). In order to obtain collateral relief under § 2255, a movant must clear a significantly higher hurdle than would exist on direct appeal. *United States v. Frady*, 456 U.S. 152, 166 (1982).

When a defendant files a § 2255 motion, she must set forth facts which entitle her to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). A movant must prove that she is entitled to relief by a preponderance of evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). A motion that merely states general conclusions of law, without substantiating the allegations with facts, is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959); *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

Under Rule 8(a) of the Governing Rules, the Court is to review the answer, any transcripts, and records of prior proceedings and any material submitted under Rule 7 to determine whether an evidentiary hearing is warranted. Rules Governing Section 2255

Proceedings, Rule 8(a). If a petitioner presents a factual dispute, then "the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007)). An evidentiary hearing is not required "if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of facts." *Valentine*, 488 F.3d at 333 (quoting *Arrendondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). The Court **FINDS** no need for an evidentiary hearing in the instant case.

### III. ANALYSIS

As an initial matter, Petitioner raises three claims in this § 2255 motion: 1) ineffective assistance of counsel for failing to argue against the gun enhancement in the PSR offense calculation, 2) that the Court erred in applying the gun enhancement when determining Petitioner's sentence, and 3) ineffective assistance of counsel for failing to argue for a minor role reduction pursuant to U.S.S.G. § 3B1.2. [Doc. 2]. The Court will first address Claim 2, and then will address Claims 1 and 3 together.

#### A. Claim 2 – Court Erred in Sentencing Based on Gun Enhancement

##### a. *Collateral Attack Waiver*

As a preliminary matter, the government asserts that Petitioner explicitly waived her right to file a § 2255 motion except for claims of ineffective assistance of counsel or prosecutorial misconduct [Doc. 8, p. 4]. Accordingly, the government asserts that her § 2255 motion should be summarily denied. [*Id.*].

6

When a defendant knowingly, intelligently, and voluntarily waives the right to collaterally attack her sentence, she is precluded from bringing such claims. *Davila v. United States*, 258 F.3d 448, 451 (6th Cir. 2001) (citing to *United States v. Fleming*, 239 F.3d 761, 763 (6th Cir. 2001). A waiver in a plea agreement is generally considered knowing and voluntary if a defendant testified that her guilty plea was not coerced and that she reviewed and understood the agreement terms. *Id*. An exception to the general rule exists if the collateral attack concerns the validity of the waiver itself. *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007). However, in situations where the § 2255 motion does not articulate a basis for attacking the validity of the waiver, the Sixth Circuit and lower courts within the Circuit have upheld collateral attack waivers if the waivers were knowing and voluntary. *Watson v. United States*, 165 F.3d at 486, 489 (6th Cir. 1999); *United States v. Eversole*, No. 6:05-cr-34, 2010 WL 420067, at *2, n.3 (E.D. Ky. Feb. 1, 2010).

In this case, Petitioner signed a Plea Agreement containing the following waiver provision: "[t]he defendant will not file any motions or pleadings pursuant to 28 U.S.C. § 2255 or otherwise collaterally attack the defendant's conviction(s) or sentence, with two exceptions: The defendant retains the right to file a §2255 motion as to (i) prosecutorial misconduct and (ii) ineffective assistance of counsel." [Crim. Doc. 120, p. 7]. At Petitioner's change-of-plea hearing, the Court reviewed the waiver provision and verified that Petitioner understood the meaning of the waiver. The Supreme Court has held that "the representations of the defendant, h[er] lawyer, and the prosecuter at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings," and "[s]olemn declarations in open court carry

7

a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Petitioner admitted that she understood the terms of the waiver provision, and nothing in the record suggests otherwise.

Moreover, Petitioner does not challenge the validity of the actual waiver, suggest that she did not understand the waiver, or claim that she did not sign it voluntarily. Accordingly, because Petitioner is not attacking the validity of the plea itself, and because she expressly waived the right to collaterally attack her conviction except for claims of ineffective assistance of counsel and prosecutorial misconduct, Claim 2 is barred by the knowing and voluntary waiver contained in the binding Plea Agreement. *See Davila*, 258 F.3d at 451. Accordingly, Petitioner's Claim 2 will be **DENIED** as barred by her collateral attack waiver. However, as discussed below, this claim alternatively fails on the merits.

### b. Merits

Petitioner primarily argues that the gun enhancement should not have been applied to her total offense calculation as there was no ammunition in the gun or elsewhere in the house, and it was solely used for self-defense, making it improbable that it was connected to the drug offense. [Doc. 2, p. 5].

When determining whether the application of a Section 2D1.1(b)(1) enhancement was appropriate, the Court considers the following factors, none of which is alone controlling:

> (1) the type of firearm involved; (2) the accessibility of the weapon to the defendant; (3) the presence of ammunition; (4) the proximity of the weapon to illicit drugs, proceeds, or paraphernalia; (5) the defendant's evidence

concerning the use of the weapon; and (6) whether the defendant was actually engaged in drug-trafficking, rather than mere manufacturing or possession.

*United States v. Greeno*, 679 F.3d 510, 515 (6th Cir. 2012); *United States v. Edmonds,* 9 Fed.Appx. 330, 332 (6th Cir.2001) (citing *United States v. Calhoun,* 49 F.3d 231, 237 (6th Cir.1995); *United States v. Chalkias,* 971 F.2d 1206, 1217 (6th Cir.1992); *United States v. McGhee,* 882 F.2d 1095, 1099 (6th Cir.1989)).

The burden of proving possession lies with the government and possession may be actual or constructive. *United States v. Tisdale*, 952 F.2d 934, 937 (6th Cir. 1992). Possession "during the commission of the offense" may be found if the firearm "could have facilitated [the] illegal [drug] transactions," the guidelines do not require that the "firearms ... be readily accessible to be 'connected' with the drug offense." *McGhee,* 882 F.2d at 1099 (finding that guns hidden in the walls and floorboards belonging to defendant were available for possible use in drug transactions). Furthermore, the government must show only that the dangerous weapon was possessed during "relevant conduct." *United States v. Faison,* 339 F.3d 518, 520 (6th Cir.2003). Relevant conduct is "all acts and omissions ... that were part of the same course of conduct or common scheme or plan as the offense of conviction." *Id.* at 520 (citing U.S.S.G. § 1B1.3(a)(2)).

Here, Petitioner does not dispute that she was in possession of a firearm. [Doc. 2, p. 5]. Nor does she contend that she is actually innocent of conspiracy to distribute marijuana to which she pled guilty. [*Id*.]. While Petitioner concludes that the gun had no ammunition nor was located within sufficient proximity to raise an inference of relatedness, she does not allege facts to support these statements. [*Id*.]. Petitioner does not state where in the

9

residence the gun was located or how close it was to where the drugs were found, and this information is not included in the facts of the Plea Agreement or the PSR. Without providing that information, Petitioner cannot meet her burden of showing that the gun possession was unrelated to the drug offense. *See Greeno*, 679 F.3d at 514; *see also United States v. Howard*, 570 F. App'x 478, 482 (6th Cir. 2014) (finding that guns were found inside defendant's house and were therefore close to where evidence shows defendant kept cocaine and proceeds of drug transactions.).

Merely because Petitioner's weapon was not loaded, and she did not have ammunition does not mean that it is "clearly improbable" that the firearm was related to the offense. *See Chalkias,* 971 F.2d at 1217 (unloaded Mac10 semiautomatic and no ammunition found in basement rafters of house where drugs were stored). The firearm in Petitioner's possession was one that is normally associated with drug activity, Petitioner was engaged in drug trafficking as she was receiving and distributing the drugs, and while the record is silent regarding the location of the firearm, arguably because Petitioner claims she used it for self-defense, it was accessible to Petitioner. *See id*; *see also Howard*, 570 F. App'x at 483. Further, Petitioner's argument that the firearm was used solely for self-defense is not persuasive as it was found in the same house as the drugs and money. *See id*. (finding that defendant's alternative explanation that he used the guns for self-defense did not detract from the court's finding that the dangerous weapon enhancement was appropriate).

10

Based on all the factors, Petitioner has not met her burden to show that it was "clearly improbable" that her possession of the firearm was connected to the drug-trafficking offense. Thus, Claim 2 fails on the merits.

### B. Claims 1 and 3 – Ineffective Assistance of Counsel

As discussed above, Petitioner's claims of ineffective assistance of counsel are not barred by her collateral attack waiver. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for h[er] defense." U.S. Const. amend. VI. A criminal defendant's Sixth Amendment right to counsel necessarily implies the right to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the *Strickland* standard for proving ineffective assistance of counsel, a movant must show: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. *Id*.

To prove deficient performance, the movant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. The appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id*. at 688. A movant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id*. at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*,

477 U.S. 365, 381 (1986). It is strongly presumed that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 690.

The prejudice prong "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable." *Id*. at 687. The movant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[.]" *Id*. at 703. Counsel is constitutionally ineffective only if a performance below professional standards caused the defendant to lose what she "otherwise would probably have won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

### a. *Claim 1: Gun Enhancement*

Petitioner's argument for ineffective assistance of counsel regarding the gun enhancement are almost identical to her arguments that the Court erred in applying the gun enhancement at sentencing discussed above. The main difference in argument is that she also claims she did not know the effect the plea agreement would have on her eligibility to be granted time off for RDAP and early release. [Doc. 2, p. 3]. She contends that she was of the understanding that once her gun charge was dismissed, she would only be charged with drugs. [*Id*.].

The government responds that the enhancement is properly applied whenever "a dangerous weapon (including a firearm) was possessed." [Doc. 8, p. 5] (citing to U.S.S.G. § 2D1.1(b)(1)). As such, Petitioner cannot show ineffective assistance of counsel by counsel's failure to object to a meritless argument. [*Id*. at 7]

### b. *Claim 3: Minor Role Reduction*

12
Case 2:19-cv-00091-RLJ-CRW   Document 11   Filed 09/28/20   Page 12 of 16   PageID #: 54

Petitioner argues that counsel was ineffective for failing to argue for a minor role reduction under U.S.S.G. § 3B1.2. [Doc. 2, p. 7]. She argues that she was a minimal participant because she had no hand in dealing the drugs, orchestrating the operation, and did not receive proceeds from the sale of the drugs. She admits that she allowed her home to be the drop-off and pick-up point for the marijuana, but she did not know the scope and structure of the conspiracy, thus she was among the least culpable of those involved. [*Id*.].

The government responds that Petitioner was not deserving of the minor role reduction as she personally accepted and redistributed the marijuana and sent at least one wire transfer to Oregon where the primary source of marijuana was located. [Doc. 8, p. 7]. Further, the government argues that Petitioner cannot establish prejudice as the mandatory minimum sentence for her offense exceeded and thus restricted the advisory guideline range, and the government's downward departure motion was the only basis which authorized the Court to go below that range in sentencing. [*Id*. at 8].

### c. *Analysis*

Both claims fail at *Strickland's* second step. Petitioner claims that her attorney's failure to argue against the gun enhancement and for a minor role reduction affected her sentencing calculations. [Doc. 2]. However, Petitioner cannot show that the Court would have ruled in her favor on either argument, but for counsel's failure.

Because Petitioner admits that the government can prove that she possessed a gun during the commission of the drug offense and has not met her burden to show that it was clearly improbable that the gun was connected to the drug offense, Petitioner cannot show prejudice. As discussed above regarding Claim 2, there is no reasonable probability that,

13

had counsel objected to the two-point enhancement for possessing a dangerous weapon, the objection would have been sustained as the enhancement was properly applied. *See Strickland*, 466 U.S. at 703. Further, Petitioner makes no claim that she was actually innocent of the drug conspiracy crime for which she was convicted, nor does she claim she would have gone to trial, but for counsel's errors. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (to show prejudice in the context of a guilty plea, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.").

Petitioner also cannot show that a failure to argue for a minor role reduction would have prejudiced her. A minor role reduction is reserved for defendants who are substantially less culpable than the average participant in the criminal activity." U.S.S.G. § 3B1.2, *comment*. (n.3(C)). The record contains sufficient facts to show that a reasonable jury could have determined that Petitioner did not play a minor role as she admitted that she operated a distribution hub for marijuana deals, that she sent at least one wire transfer to Oregon where the drugs originated, and that she was responsible for at least 100 kilograms, but less than 400 kilograms of marijuana. *See United States v. Bartholomew* 310 F.3d 912, 924-25 (6th Cir. 2002) (finding a defendant whose house was used a base of operations, who stored a shotgun and ammunition in the same residence where the drug deals were taking place, and who personally received at least one large shipment of marijuana was not entitled to the minor role reduction); *see also United States v. Keller*, 336 Fed.App'x 497, 502 (6th Cir.) (finding that a defendant who aided in the cutting and

14

repackaging of cocaine and arranging and carrying out drug deals was not entitled to the minor role reduction as his role was indispensable to the operation).

Accordingly, Petitioner's Claims 1 and 3 will be **DENIED** as Petitioner has not shown that she was prejudiced by any alleged ineffectiveness of counsel.

## IV. CONCLUSION

For the reasons above, Petitioner's § 2255 motion [Doc. 1; Crim. Doc. 355] will be **DENIED** and **DISMISSED**.

## V. CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if a petitioner has demonstrated a "substantial showing of a denial of a constitutional right." *Id.* The district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Id.*

A petitioner whose claims have been rejected on the merits satisfies the requirements of § 2253(c) by showing that jurists of reason would find the assessment of the claims debatable or wrong. *Slack*, 529 U.S. at 484. Having examined Petitioner's claim under the *Slack* standard, the Court finds that reasonable jurists could not find that the dismissal of those claims was debatable or wrong. Therefore, the Court will **DENY** issuance of a certificate of appealability.

A separate judgment will enter.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan<br>United States District Judge